## Case No. 13,853.

THAIN v. The NORTH AMERICA.

[2 N. Y. Leg. Obs. 67.]

District Court, S. D. New York. June, 1842.

COLLISION—VESSEL AT ANCHOR—LIGHTS—WATCH.

The British barque George Canning was lying at anchor within 300 yards of the Battery, at about 4 o'clock in the morning. The steamboat North America rounded to just below the George Canning, in order to come into her berth

at the foot of Courtlandt street. The usual method was adopted of bringing her to the slip. and she followed the accustomed route, slackening her speed in making way to the landing place, in doing which she came in collision with the George Canning, thereby doing considerable injury to both vessels. It appeared that the George Canning had, at the time of the collision, no light suspended, and that no watch was on board her. In a suit by the owners of the George Canning, to recover damages for the injury sustained, *held*, that the George Canning was acting in violation of an express law, in lying at anchor without showing a light, and that, independent of the state statute, her remaining in the darkness of the night without a light, and without a watch on deck, amounted to culpable negligence, and that therefore the suit was not sustainable.

[Cited in The Indiana, Case No. 7,020; Flynn v. The Falcon, Id. 4,619; Jones v. The Hanover, Id. 7,466.]

In admiralty. The British barque George Canning was lying at anchor within 300 yards of the Battery, the night of the 30th of March, 1842. At about 4 o'clock in the morning, the steamboat North America, coming from Albany, rounded to just below the George Canning, in order to come into her berth at the foot of Courtlandt street. This was the usual method of bringing her to the slip, and on this occasion she also followed the accustomed route, going below the dock, slackening her speed, and being then brought round and worked up to her landing place. In making her way up she came upon the barque, and both vessels were considerably injured by the collision. The barque, at the time, had no light suspended, and no watch on deck. Much testimony was called on both sides to prove the state of the atmosphere at the time,—on the part of the barque, it being attempted to be proved that daylight had appeared, and was sufficiently advanced to enable persons on board the North America to see the barque a distance off amply sufficient to take measures to avoid her; and on the other side, that it was so thick and dark at the time that the barque, without the aid of a light hung out, could not be seen the length of the steamboat from her.

Charles Edwards, for libellant.
H. B. Cowles, for claimants.

The libellant cited the following cases: 5 C. Rob. Adm. 291; 4 Blackf. 224; 7 Dana, 134; Com. Dig. "Burglary"; Dwar. St. p. 628, c. 12; Abb. Shipp. 206–208; 2 Hagg. Adm. 173; 1 Bing. 213.

The claimants cited 14 Johns. 304; 2 Hall, 151, 161; 1 Cow. 78; 21 Wend. 188; 19 Wend. 399; Abb. Shipp. 354; 5 Car. & P. 375; 3 Car. & P. 554; 4 Car. & P. 106.

BETTS, District Judge. I think a decided preponderance of proof establishes these facts: That the collision was wholly accidental, free of intentional neglect or fault on either side. That the steamboat was navigated with reasonable care and precaution, and was pursuing the usual course of

her voyage at the time of collision with the libellant's vessel. That it was nighttime, and thick, dark weather on the water. That the vessel of the libellant, at anchor off Castle Garden, had no watch on deck at the time, and no light exhibited in the rigging, and none within view on deck, and she was not seen on board the steamboat until the boat was too near to avoid collision. That if a light had been suspended in the rigging of the vessel, she might have been discovered from the boat in time to avoid her.

In adopting these conclusions of fact, I do not overlook the pointed contradiction of testimony exhibited against the one side by that of the other, nor the collateral evidence tending to show that the sky was clear, and that the libellant's vessel could be plainly discernible at a distance amply sufficient to enable the steamboat to go clear of her. The greater number of witnesses, and those placed in a situation best to judge, prove, in my opinion, the facts adopted as the basis of this decree. The rules of law applicable to such a state of facts are familiar, and clearly established upon authority recognized in this country and England. First, admitting the George Canning was managed with the most prudent precaution, and was therefore in no way accessory to the injury received, yet, if the steamboat was also clear of all fault or neglect, no damages would be recoverable. Each party injured would bear his own loss. Abb. Shipp. 354; 3 Kent, Comm. 251; Story, Bailm. p. 381, §§ 607, 608, 611. The proof is satisfactory that the steamboat was properly checked in her speed in coming round; that an attentive watch was kept up on board, two pilots were at her wheel, and all hands on deck, and that everything was done that is usual in bringing such vessels into their berths, to avoid coming in contact with other vessels; and that after the George Canning was discovered the headway of the boat was stopped, and the machinery worked for a backward movement as promptly as the order could be given and executed. This, then, renders the occurrence an accident on the part of the boat, if the vessel at anchor had, on her side, done all that was prudent in her position, to obviate such damages. Lack v. Seward, 4 Car. & P. 106; Handaysyde v. Wilson, 3 Car. & P. 538.

This view of the case dispenses with the necessity of discussing the question whether nighttime, in its general acceptation, is to be regarded as continuing till displaced by that degree of daylight which gives the vision command of surrounding objects; or whether it is to be understood as defined in the criminal law, when there is not light enough began or left, whereby the countenance of a person may be reasonably discerned (2 Russ. Crimes, 940): for, whatever the hour may have been, or whether the master of the George Canning was guilty of any omission of duty or proper care in not

carrying a light in his rigging, the steamboat is alike exempt from a claim of damages, no fault being proved against her, the decided weight of evidence being that, with the exercise of every reasonable diligence on board, the Canning was not seen in time to be avoided. But, the case presenting the point directly, I have no hesitation in saying that not only was the George Canning acting in violation of an express law in lying at her place of anchorage without showing a light, but that, independent of the state statute, it was culpable negligence in her to remain in the then darkness of the night without both such light and a watch on deck.

Decree dismissing the libel, with costs to be taxed.